# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | | |
|---|---|---|
| Joy Goodley, | ) | Civil Action No.: 3:24-cv-02352-MGL |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | **(JURY TRIAL DEMANDED)** |
| | **)** | |
| | ) | |
| SJ Transportation Company, Inc., and | ) | |
| Anthony Stratton | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff above-named, by and through their undersigned counsel, hereby make the following claims and allegations:

## PARTIES AND JURISDICTION

1. That Plaintiff is a citizen and resident of Sumter County, State of South Carolina.

2. Upon information and belief, Defendant Anthony Stratton (hereinafter "Stratton"), is a resident of Carneys Point, New Jersey.

3. Upon information and belief, Defendant SJ Transportation Company, Inc. (hereinafter "SJ") is an incorporation formed under the laws of the State of New Jersey with its principal place of business in the State of New Jersey. SJ operates a commercial motor carrier bearing USDOT Number 154323.

4. The wreck that is the subject of this Complaint occurred in Sumter County, State of South Carolina on or about December 15, 2022.

1

5. Shortly after 11:20 AM, on or about December 15, 2022, Plaintiff was operating a vehicle traveling West on East Liberty Street in lane 2. Defendant was turning left onto East Liberty Street from Myrtle Beach Highway heading West. Defendant made an improper turn into lane 2 and struck Plaintiff.

6. As a result of the collision, the Plaintiff suffered the following injuries and damages:

   a. Extensive pain, mental anguish, suffering and discomfort;

   b. Disability for a period of time, past and future;

   c. Money spent for medical care and treatment, past, present and future;

   d. Inability to carry on normal activities;

   e. Permanent injuries and disabilities;

   f. Permanent injury;

   g. Severe emotional trauma and distress;

   h. Loss of enjoyment of life; and,

   i. Lost past, present and future earnings and income.

## FOR A FIRST CAUSE OF ACTION
### (Against Defendant Stratton)
### Commercial Motor Vehicle Negligence

7. Plaintiff repeats and realleges as if verbatim herein paragraphs 1-9.

8. At all times relevant to this Complaint, Defendant Stratton was operating a commercial motor vehicle.

9. In order to undertake such actions, Defendant Stratton should have had the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

10. The safe operation of commercial motor vehicles requires specialized knowledge, skills and additional training not necessary for the safe operation of passenger vehicles, and

commercial motor vehicles pose more of a risk of causing personal injury, death, or property damage in a collision.

11. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that speeding, improper passing, improper turning, and not looking properly are major causes of accidents.

12. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand that out of all of the space surrounding your vehicle, the space you are driving into is the most important.

13. In addition to the basic knowledge and skills required of commercial motor vehicle drivers, it is standard in the industry for drivers to understand the dangers of speeding, improper turning, and reckless driving.

14. The injuries and damages incurred by Plaintiff were directly and proximately caused by the Defendant's careless, negligent, willful and/or wanton acts in one or more of the following particulars:

    a) in failing to steer or take evasive action so as to avoid the collision;

    b) in failing to keep a proper lookout;

    c) in failing to yield as required by law;

    d) in making an improper turn;

    e) in failing to observe the condition of traffic;

    f) in operating a commercial motor vehicle when he was not qualified;

    g) in failing to have the requisite knowledge and skill regarding the procedures for safe vehicle operations;

      h)      in failing to have the requisite knowledge and skill regarding the importance of conducting a proper visual search and in conducting an improper visual search;

      i)      in failing to have the requisite knowledge and skill regarding the procedures and techniques for controlling the space around the vehicle;

      j)      in failing to operate his vehicle as a prepared, defensive driver;

      k)      in operating his vehicle while distracted; and,

      l)      in turning his vehicle in the path of oncoming traffic.

15. That Defendant Stratton's careless, negligent, willful, wanton, reckless and unlawful acts were the direct and proximate cause of the collision and resulting injuries and damages to the Plaintiff.

16. Plaintiff is informed and believes that she is entitled to judgment against the Defendant for actual and punitive damages in an appropriate amount.

17. That, as a direct and proximate result of the negligence, gross negligence, carelessness, recklessness, willfulness, and wantonness of Defendant, as is set forth more fully above, Plaintiff was injured, has endured pain and suffering, has suffered mentally and emotionally, and has incurred, and will incur, various medical expenses, has incurred property damage, and has otherwise been damaged and injured.

18. That, as a direct and proximate result of the negligence, gross negligence, careless, recklessness, willfulness and wantonness of the Defendant, as set forth more fully above, Plaintiff sustained serious and painful personal injuries and property damage.

19.    That, as a direct and proximate result of the negligence, gross negligence, careless, recklessness, willfulness, and wantonness of Defendant, as set forth more fully above, Plaintiff has been damaged and injured in the following respects:

a.)   Plaintiff has been required to expend a significant amount of money for Plaintiff's medical care, treatment, and attendant services;

b.)   Plaintiff has been unable to work full time hours and has been deprived of Plaintiff's income;

c.)   Upon information and belief, the nature of Plaintiff's injuries will deprive Plaintiff of employment opportunities and income in the future;

d.)   The pain of Plaintiff's injuries has resulted in Plaintiff's loss of enjoyment of life and change in Plaintiff's personality, all to permanent detriment to Plaintiff's health and well-being; and

e.)   Upon information and belief, Plaintiff was required to expend significant amounts of money to replace property damage caused in the collision.

20.    That Defendant's acts and omissions, as set forth more fully above, show willful misconduct, malice, wantonness, and entire want of care, raising a presumption of Defendant's conscious indifference to the consequences of such acts and omissions.

21.    That, because the Defendant's acts and omissions and the proximate harm resulting to Plaintiff, Plaintiff should be awarded punitive damages in an amount to be determined by the trier of fact in order to punish and penalize Defendant and to deter Defendant and others from similar behavior.

22.    That, upon information and belief, Plaintiffs are entitled to judgement against Defendant for actual, compensatory, exemplary, and punitive damages for Plaintiff's personal

injuries and property damages set forth herein in an amount that is fair, just, and reasonable under the circumstances, plus whatever costs, interest, and attorney fees that Plaintiff may be entitled to be determined by a jury.

## FOR A SECOND CAUSE OF ACTION
### (Against Defendant SJ)
### Respondeat Superior / Agency – Principal Liability

23. Plaintiff repeats and realleges paragraphs 1-22 as if restated verbatim herein.

24. At all times relevant to the allegations contained in this Complaint, the Defendant Stratton was working in the course and scope of his employment for the Defendant SJ, or was otherwise acting as an agent or servant of Defendant SJ.

25. Defendant SJ is liable for the acts and omissions of the Defendant Stratton under the doctrines of respondent superior, master/servant, and/or agent/principal.

26. At all times relevant to this Complaint the Defendant Stratton was operating a commercial motor vehicle in intrastate or interstate commerce under the USDOT authority granted to SJ.

27. Defendant SJ is liable for the acts and omissions of Defendant Stratton while he was operating under its authority by virtue of the Federal Motor Carrier Safety Regulations.

28. The Plaintiffs are informed and believe that they are entitled to judgment against the Defendant SJ for actual and punitive damages in an appropriate amount.

## FOR A THIRD CAUSE OF ACTION
### (Against Defendant SJ)
### Negligent Hiring, Training, Supervision, Retention and/or Monitoring

29. Plaintiff repeats and realleges paragraphs 1-28 as if restated verbatim herein.

30. The Defendant SJ operates as a private commercial motor carrier.

31. In return for the privilege to operate commercial motor vehicles on the public

roadways, prospective motor carriers must make certain safety related certifications and verifications.

32. Motor carriers such as SJ are required to submit a Form MCS – 150 to the Federal Motor Carrier Administration and obtain an USDOT number.

33. Each Form MCS – 150 DBT submitted or will submit contains a Certification Statement whereby SJ declares under penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations and/or Federal Hazardous Materials Regulations.

34. Reasonably safe motor carriers develop and implement policies, practices and procedures to give effect to the minimum safety standards contained in the Federal Motor Carrier Safety Regulations to reduce or eliminate preventable collisions that may cause injury, death, or property damage on the public roadways.

35. Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

36. The safe operation of commercial motor vehicles includes practices and procedures related to speed management, space management, seeing ahead, controlling speed, and accident countermeasures.

37. Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls which are designed to reduce collisions involving commercial motor vehicles.

38. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

39. To be qualified to operate a commercial motor vehicle, a driver must have experience and/or training to safely operate the type of vehicle; must be physically qualified; must have a currently valid CDL, and must furnish the motor carrier a list of current driving violations.

40. To operate a commercial motor vehicle under SJ's authority, the prospective driver is required to complete a written application containing the following information;

    a) the nature and extent of the driver's experience;

    b) a list of all accidents in the previous 3 years;

    c) a list of all violations of motor carrier vehicle laws in the previous 3 years;

    d) a detailed description of any denial, revocation, or suspension of any driver's license or permits;

    e) employment information for the previous 3 years; and,

    f) the names of all employers for whom the driver has operated a commercial motor vehicle for the previous 7 years.

41. Before a motor carrier such as SJ may allow or permit a driver to operate a commercial motor vehicle under its authority, the motor carrier must:

    a) obtain the driver's motor vehicle record from the applicable state agency for the previous 3 years; and,

    b) investigate the driver's safety performance history with all DOT regulated employers for the previous 3 years.

42. Motor carriers such as SJ are required to maintain a Driver Qualification File meeting the requirements of 49 CFR § 391.51 for the duration of the driver's employment with the motor carrier plus three years after employment.

43. It is standard in the industry for motor carriers to use the information contained in the required daily driver logs, vehicle inspection reports, and other supporting documents to audit the safety performance of their drivers.

44. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver is not qualified to do so.

45. Motor carriers should never allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate the vehicle.

46. The injuries and damages incurred by the Plaintiff were directly and proximately caused by the Defendant SJ's careless, negligent, grossly negligent, willful, wanton, reckless, and unlawful acts in one or more of the following particulars by failing to use reasonable care in;

    a) failing to design, develop, and implement adequate safety management controls related to speed management, space management, seeing ahead, controlling speed, accident countermeasures, and distracted driving awareness;

    b) failing to train Defendant Stratton regarding the operation of a commercial motor vehicle in accordance with the industry standards;

    c) failing to properly monitor and supervise the driving habits of Defendant Stratton;

    d) supervision of its business operations in failing to properly monitor the driving habits and records of its drivers, employees, and/or agents, specifically, Defendant Stratton;

    e) supervision of its drivers, employees, and/or agents, specifically,

Defendant Stratton;

f) instruction of its drivers, employees, and/or agents, specifically Defendant Stratton;

g) entrustment of Defendant Stratton to operate a commercial motor vehicle under the authority of its USDOT number;

h) compliance with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery of this case;

i) failing to utilize available information and technology to properly monitor and/or screen its drivers, employees, and/or agents, specifically the Defendant Stratton for compliance with company policies and/or state and federal regulations;

j) in allowing the Defendant Stratton to operate a commercial motor vehicle despite knowledge of his inability to do so safely; and,

47. The Defendant SJ's careless, negligent, willful, wanton, reckless and unlawful acts were the direct and proximate cause of the collision and resulting injuries and damages to Plaintiff.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendant for actual and punitive damages in an appropriate amount to be determined at trial, the costs of this action, and for such other and further relief as the Court may deem just and proper.

[Signature Block on Following Page]

Respectfully submitted,

By:     S/Greg B. Collins
Greg B. Collins Fed Bar # 10350
SAVAGE, ROYALL & SHEHEEN, LLP
Post Office Drawer 10
Camden, South Carolina 29021
(803) 432-4391
gcollins@thesavagefirm.com

—and—

S/ Arien P. Cannon
Arien P. Cannon, Federal Bar # 13768
Cannon Law Group, P.C.
512 Rutledge Street
Post Office Box 532
Camden, South Carolina 29021
Phone: (803) 432-4402
Fax: (803) 432-3048
ACannon@dncannonlaw.com

*Attorneys for Plaintiff*

April 24, 2024

11